IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Thomas Earl Jones,                          )
                                            )      Civil Action No. 6:15-cv-3408-TMC-KFM
                    Plaintiff,              )
                                            )      **REPORT OF MAGISTRATE JUDGE**
          vs.                               )
                                            )
Wilbert Burial Vault, Inc.,                 )
Boyd C. Anderson, and                       )
Stephen M. Young,                           )
                                            )
                    Defendants.             )
_____        )

          This matter is before the court on the defendants' motions to dismiss for failure to state a claim (docs. 20, 35) and the *pro se* plaintiff's motions for judgment on the pleadings or, in the alternative,  to strike defenses (doc. 30).  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. A hearing on the pending motions was held before the undersigned on June 30, 2016 (doc. 43).

## FACTS PRESENTED

          On March 22, 2015, the plaintiff terminated his employment with defendant Wilbert Burial Vault, Inc. (doc. 1 at 3).  On April 7, 2015, the plaintiff sent by certified mail a letter to defendant Boyd Anderson, a Trustee of the Wilbert Burial Vault Company, Inc. 401(k) Profit Sharing Plan ("the Plan")[1] (doc. 1-4 at 3), requesting that the plaintiff's "retirement account statement balance" of $22,108.38 be sent to him (doc. 1-2 at 3).  The

_____

[1] Defendant Stephen M Young is also a Trustee of the Plan (doc. 1-4 at 3).

plaintiff also sent a copy of the letter to Pentegra Retirement Services[2] ("Pentegra") (doc. 1-1 at 3).

The plaintiff states in his complaint that he spoke with a customer service representative with Pentegra who told him that the lump sum distribution of his account would be on December 31, 2015 (doc. 1 at 4). In April and May 2015, the plaintiff sent forms to Pentegra requesting distribution of his total vested account value from the Plan (doc. 1-5). On April 9, 2015, Mr. Anderson asked for Pentegra's assistance in responding to the plaintiff's request for a payout from his 401(k) account (doc. 20-3 at 3). Linda Altom of Pentegra responded that she had reviewed the plaintiff's account, and it appeared that the plaintiff only had an account balance in the "outside Profit Sharing accounts," which under the Plan provisions could not be distributed until the year-end valuation of the funds was completed (doc. 20-3 at 2).

The plaintiff contacted the United States Department of Labor for assistance (doc. 1 at 4). On May 21, 2015, at the request of the Department of Labor, Pentegra forwarded a copy of the Summary Plan Description to both the plaintiff and to the plaintiff's contact with the Department of Labor (doc. 20-4).

On July 6, 2015, the plaintiff submitted a Retirement Account Transfer Request at SunTrust Bank seeking a direct rollover of his Wilbert Burial Vault, Inc. retirement account to a traditional IRA (doc. 1-3). In a letter dated August 14, 2015, the plaintiff was notified by SunTrust Bank that it had been unsuccessful in attempts to request

---

[2] In their answer and first motion to dismiss, the defendants identify Pentegra as the Plan Administrator (doc. 20 at 3-4; doc. 23 at 2). However, the Summary Plan Description attached to the plaintiff's complaint, which is the only Plan document in the record, identifies defendant Wilbert Burial Vault Co., Inc. as "the Company" and states, "The Company is the Plan Administrator" (doc. 1-4 at 3). It appears from the documents before the court that Pentegra is a third-party administrator hired to perform the administrative functions of the Plan.

2

his retirement funds (*id.*).  The plaintiff was advised to contact Wilbert Burial Vault, Inc. to determine what actions were required to successfully request his funds (*id.*).

The Summary Plan Description provides for two different types of employee accounts, a "401(k) Contribution Account" and a "Profit Sharing Contribution Account" (doc. 1-4 at 7).  The retirement plan account statement attached by the plaintiff to his complaint shows that his account was a profit sharing account (doc. 1-7 at 1).  The Summary Plan Description further provides, in pertinent part, in the "Distribution and Methods of Payment of Benefits" section:

> You will be entitled to the vested value of your Accounts when you leave the Company for any reason including Total Disability or Death. . . .
>
> If you leave the Company before Normal Retirement Age (defined in Article IV), the payment of your benefits at the time you leave will be made as soon as administratively feasible after the end of the Plan Year in which you terminate employment. . . .

(Doc. 1-4 at 13).

In his complaint, the plaintiff contends that the defendants did not comply with the Plan provision that participants "will be entitled to the vested value of your account when you leave the company for any reason" (doc. 1 at 4).  He seeks equitable relief, injunctive relief, and punitive and compensatory damages for the defendants' failure to immediately pay him the distribution proceeds from the profit sharing account (*id.* at 8).

On October 23, 2015, the defendants filed a motion to dismiss for failure to state a claim (doc. 20).  On October 26, 2015, this court filed an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advising the plaintiff of the motion to dismiss and motion for summary judgment procedures and the possible consequences if he failed to respond adequately (doc. 21).  The plaintiff filed his response in opposition to the defendants' motion (doc. 31) as well as motions for judgment on the pleadings and to strike

3

defenses (doc. 30) on December 3, 2015. The defendants filed their response in opposition to the plaintiff's motions on December 17, 2015 (doc. 33).

In the defendants' first motion, they argue that the plaintiff's complaint should be dismissed because the "governing provisions of the Plan . . . require[] that such distribution be made after the end of the year in which an employee's employment is terminated" (doc. 20-1 at 3). The defendants argue that they are in compliance with the terms of the Plan and have provided the plaintiff with the required Plan information under the Employee Retirement Income Security Act ("ERISA"") (doc. 20 at 1-4). The defendants further argue that the plaintiff failed to exhaust his administrative remedies by filing a claim (*id.* at 3). The Plan's Summary Plan Description provides as follows in the "Claims Procedures" section: "If you (or after your death, your Beneficiary) feel that you are not receiving benefits which are due you, you must file a written claim for your benefits with a member of the Committee or officer of the Company. The Committee will decide whether to grant or deny your claim. . . ." (doc. 1-4 at 17). Lastly, the defendants argue that the complaint should be dismissed because the plaintiff did not name the Plan or the Plan Administrator[3] as defendants (doc. 20 at 3-4).

On April 18, 2016, defense counsel's paralegal contacted the plaintiff and advised him that his profit share distribution had been approved for processing and payment and that an updated distribution form/application was required in accordance with the rules and regulations of the Internal Revenue Service ("IRS") (doc. 35-1, Jennifer Little aff. ¶ 2). The plaintiff requested that Ms. Little mail the form to him and stated that he would return a completed and signed copy (*id.*). Accordingly, the form was mailed to the plaintiff (*id.*; *see* doc. 35-2). On April 20, 2016, Ms. Little received a voicemail message from the

---

[3] As noted above, while the defendants contend that Pentegra is the Plan Administrator, the Summary Plan Description identifies Wilbert Burial Vault Co., Inc. as the Plan Administrator (doc. 1-4 at 3).

4

plaintiff indicating that he would not complete the form and that the form he completed on May 12, 2015, should suffice (doc. 35-1, Little aff. ¶ 3; *see* doc. 1-5).  On April 22, 2016, the defendants' counsel sent the plaintiff a letter confirming a voicemail message left by counsel in which he advised the plaintiff that the need for a new distribution form/application was a requirement of the IRS, as the agency's regulations required a signed distribution form not to exceed 180 days from the date of payment (doc. 35-3; *see* doc. 40-1).

On May 5, 2016, the defendants filed a second motion to dismiss for failure to state a claim or, in the alternative, to compel the plaintiff to execute the updated distribution form (doc. 35).  Another *Roseboro* order was issued to the plaintiff on May 6, 2016 (doc. 36). The plaintiff filed his response in opposition on June 8, 2016, arguing that he has already completed a distribution form on May 12, 2015 (doc. 38; *see* doc. 1-5).  The defendants filed a reply (doc. 40) on June 14, 2016.

In their second motion to dismiss (doc. 35), the defendants state that the Plan Administrator completed the year-end accounting in April 2016, and the plaintiff was advised by telephone call and two letters that his profit share payment was ready for processing.  However, he has thus far refused to complete an updated application/distribution form as is required by the income tax regulations. *See* 26 C.F.R. §1.402(f)-1, A-2(a). Accordingly, in the alternative to dismissal of the complaint, the defendants ask that the court require the plaintiff to execute a distribution form so that a profit share check can be issued.  The defendants seek attorney's fees and costs associated with filing the second motion (doc. 35 at 2).

At the hearing before the undersigned on June 30, 2016, the parties were directed to notify the court on or before July 7, 2016, as to whether or not they had reached an agreement on the distribution amount (doc. 43).  On June 30th, the plaintiff faxed to the court a copy of his retirement plan account statement for the period from October 1, 2015, to December 31, 2015, which shows a balance of $27,138.71 (doc. 45).  On July 7, 2016,

the plaintiff faxed to the court a copy of a letter he sent to defense counsel (doc. 46).  The plaintiff states in the letter that he provided a distribution form in 2015 and expresses his distrust for the reasons behind the defendants' request that he complete a new form (*id.*). Defense counsel provided a letter to the court on July 7, 2016, stating that the amount of the plaintiff's profit share is undisputed, but the plaintiff "inexplicably refuses to execute the required distribution form/application" (doc. 47).  Defense counsel further states that until the update form is completed and signed, the defendants cannot tender to the plaintiff his profit share (*id.*).

## APPLICABLE LAW AND ANALYSIS

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6). *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999)).   "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 569 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The court must liberally construe *pro se* complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

6

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The court may consider such a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id*. at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). *See also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court… may also "consider documents attached to… the motion to dismiss, so long as they are integral to the complaint and authentic.") (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007)).

Here, the parties have attached documents that were not attached to the complaint and that are not integral to the complaint. Specifically, the plaintiff and the defendants have submitted affidavits and copies of emails, letters, and other documents that this court has not excluded and has considered with regard to the pending motions. Further, the parties have been given a reasonable opportunity to present all material that is pertinent to the motions. Accordingly, the motions must be treated as motions for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).[4]

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[4] Rule 12(d) states: "If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The plaintiff cites three ERISA provisions in his complaint (doc. 1 at 8). The first provision is § 502(a)(1)(B), which allows a plaintiff " to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). "[W]hen a plaintiff is merely claiming that a fiduciary misinterpreted or misapplied an ERISA plan, the proper avenue for relief is a § 1132(a)(1)(B) claim for denial of benefits, not a

claim for breach of fiduciary duty." *Fuller v. Liberty Life Assurance of Boston*, 302 F. Supp. 2d 525, 533 (W.D.N.C. 2004).

The second provision cited by the plaintiff is § 502(a)(2) (doc. 1 at 8). *See* 29 U.S.C. § 1132(a)(2). However, "[r]ecovery under this subsection must 'inure[] to the benefit of the plan as a whole,' not to particular persons with rights under the plan." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570, 573 (4th Cir.2006) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). Here, the plaintiff has not alleged any loss to the Plan itself; rather, he only alleges his own loss and seeks only his own individualized relief. Accordingly, he cannot state a claim under this subsection. *See Cherepinsky v. Sears Roebuck and Co.*, 487 F.Supp.2d 632, 637-38 (D.S.C. 2006).

The third provision cited by the plaintiff is § 502(a)(3), which provides:

> A civil action may be brought -
> ***
> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). *See Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir.1991) (fiduciary duty attaches where employer "wear[s] two hats" by acting as both employer and plan administrator). In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that § 502(a)(3) authorizes plan beneficiaries to bring suit "that seeks relief for individual beneficiaries harmed by an administrator's breach of fiduciary obligations." *Varity Corp.*, 516 U.S. at 492. In his complaint, the plaintiff makes conclusory allegations of "discrepancies holding back [his] request[s] for distribution" and that "defendants are impeding [his] progress with tricks and lies" (doc. 1 at 5-6). However, he has failed to allege sufficient facts to state a claim for breach of fiduciary duty that is plausible upon its face, and he has

failed to show any evidence in support of any claim of breach of fiduciary duty against the defendants.

Here, as noted above, the parties disagree as to the timing for distribution of the plaintiff's profit share. The plaintiff claims that, under the Plan's terms, the distribution should have been made immediately following his request, and the defendants contend that, under the Plan's terms, the distribution could not be made until after the end of the Plan year (*see* doc. 1-4 at 13). "Where the resolution of a plaintiff's claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA, the plaintiff's claim is actually a claim for benefits." *Johnson v. Michelin N.A.*, 658 F. Supp. 2d 732, 744 (D.S.C. 2009) (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir.1999)). As it is clear that the plaintiff is "merely claiming that a fiduciary misinterpreted or misapplied an ERISA plan . . . the proper avenue for relief is a § 1132(a)(1)(B) claim for denial of benefits, not a claim for breach of fiduciary duty." *Fuller*, 302 F. Supp. 2d at 533.

In his complaint, the plaintiff seeks "[e]quitable relief by way of injunction with specific performance" (doc. 1 at 8). He further alleges that as a result of the defendants' failure to give him his money, he has suffered "depression, tension, public shame, embarrassment to friends and loved ones, deprived of the enjoyment of life, sleepless nights worrying of mortgage payment, public services lost, emotional distress, and just restless" (*id.* at 6). He contends that he has suffered "loss of joint financial assistance for the year benefit plan of 2015 for instance, paid vacation, vacation bonus, holiday pay, sick leave, bonuses, personal days, and all other nondisclosed benefit covered in the plan that's allocated to all benefit plan participants under the company plan" (*id.* at 7). As the plaintiff's alleged injury may be adequately redressed by an ERISA benefits claim as described above, he cannot proceed on a § 502(a)(3) claim. The Honorable Patrick Michael Duffy, Senior United States District Judge, has found as follows:

10

> As the Fourth Circuit noted in *Korotynska v. Metropolitan Life Insurance Co.*, 474 F.3d 101, 102 (4th Cir.2006), "Individualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." The Fourth Circuit found that "[b]ecause adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie." *Id*. In the case *sub judice*, Plaintiff brings his first cause of action pursuant to § 1132(a)(1)(B). Because adequate relief is available to the Plaintiff under this subsection, Plaintiff is not entitled to individualized relief under section 502(a)(3).

*Cherepinsky* 487 F. Supp. 2d at 641-42.  *See Johnson v. Michelin N. America*, 658 F. Supp. 2d 732, 744 (D.S.C. 2009) (dismissing plaintiff's breach of fiduciary duty claim under § 502(a)(3) because his entitlement to relief turned on the interpretation of the Plan and he had an adequate remedy under § 502(a)(1)(B)).

Based upon the foregoing, the undersigned concludes that the plaintiff's claims under § 502(a)(2) and (3) should be dismissed as the plaintiff's appropriate avenue for relief is a claim for benefits pursuant to § 502(a)(1)(B).

As to the plaintiff's claim for benefits under § 502(a)(1)(B), the undersigned recommends that the district court grant the defendants' alternative motion to compel the plaintiff to execute a new distribution form (doc. 35).The United States Tax Code requires as follows:

> (1) In general.--The plan administrator of any plan shall, within a reasonable period of time before making an eligible rollover distribution, provide a written explanation to the recipient–
>
>> (A) of the provisions under which the recipient may have the distribution directly transferred to an eligible retirement plan and that the automatic distribution by direct transfer applies to certain distributions in accordance with section 401(a)(31)(B),
>>
>> (B) of the provision which requires the withholding of tax on the distribution if it is not directly transferred to an eligible retirement plan,

(C) of the provisions under which the distribution will not be subject to tax if transferred to an eligible retirement plan within 60 days after the date on which the recipient received the distribution,

(D) if applicable, of the provisions of subsections (d) and (e) of this section, and

(E) of the provisions under which distributions from the eligible retirement plan receiving the distribution may be subject to restrictions and tax consequences which are different from those applicable to distributions from the plan making such distribution.

26 U.S.C. § 402(f).  The regulations provide that the Plan Administrator must provide this notice[5] no less than 30 days and no more than 180 days before the distribution is to be made.  The participant may waive the 30-day period. If a participant dies, then his or her spouse or beneficiary must receive this notice   (doc. 40-1).  *See* 26 C.F.R. §1.402(f)-1, A-2(a).  The plaintiff contends that he should not be required to execute a new distribution form because he has already provided one to Pentegra.   The form referenced by the plaintiff was executed on May 12, 2015, and requests a direct payment of $22,108.38 (doc. 1-5).  The parties are in agreement that the plaintiff's account balance is now  $27,138.71 (doc. 46, 47).[6]  Clearly, a new form is required so that the defendants may comply with the tax regulations requiring timely notice and so that the plaintiff may receive the correct, larger amount of distribution. Once the plaintiff receives the distribution from the profit sharing account, his claim for benefits under § 502(a)(1)(B) will also fail.  In *Fuller*, the United States District Court for the Western District of North Carolina found as follows:

---

[5] The notice "generally explains the rollover rules, the effects of rolling an eligible rollover distribution to an IRA or another plan, and the effects of not rolling it over, including the automatic 20% withholding" (doc. 40-1; *see* https://www.irs.gov/retirement-plans/retirement-plan-participant-notices-distributions).

[6]The form signed by the plaintiff on May 12, 2015, provides that a Third Party Administrator Fee of $90.00 will be deducted from the net withdrawal amount (doc. 1-4 at 4).  The same fee will apply on the new distribution form (*see* doc. 47).

12

> [T]he claim fails even when cast as one for denial of benefits because Defendants have already reimbursed her the benefits that she was denied, and the Supreme Court has held that plan participants are not entitled to extracontractual damages for delay in receiving benefits. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). Since Defendants retroactively paid Plaintiff the disability benefits that accrued while her claim had been denied and her appeal was pending, Russell makes it clear that she is entitled to no additional relief. *Id*.

*Fuller*, 302 F. Supp. 2d at 533-34.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned recommends that the district court deny the plaintiff's motion for judgment on the pleadings or, in the alternative, to strike defenses (doc. 30), grant in part the defendants' motions to dismiss (docs. 20, 35), and grant the defendants' alternative motion to compel the plaintiff to execute a new distribution form (doc. 35). Furthermore, should the district court adopt this recommendation, once the distribution to the plaintiff has been made, the defendants should be allowed to renew their motion to dismiss the plaintiff's remaining claim for benefits under § 502(a)(1)(B).

s/ Kevin F. McDonald
United States Magistrate Judge

July 8, 2016
Greenville, South Carolina

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).